**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY HUTCHISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 6521 |
| | ) | Hon. Marvin E. Aspen |
| FITZGERALD EQUIPMENT CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| FITZGERALD EQUIPMENT CO., INC., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BORKHOLDER CORPORATION, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Marvin E. Aspen, District Judge:

Plaintiff Stanley Hutchison filed a two-count complaint against Defendant Fitzgerald Equipment Co., Inc. ("Defendant" or "Fitzgerald"), seeking to recover for injuries stemming from a forklift accident. (2d Am. Compl. (Dkt. No. 85).) Presently before us is Defendant's motion for summary judgment on Plaintiff's negligence claim pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 68.) Also before us is Defendant's motion to dismiss Plaintiff's in concert liability claim pursuant to Rule 12(b)(6). (Dkt. No. 86.) For the reasons stated below, Defendant's motions are granted.

## FACTUAL BACKGROUND

Plaintiff worked as a truck driver for Borkholder Corporation ("Borkholder") for almost

30 years. (Def's L.R. 56.1(a) Statement of Material Facts ("SOF") (Dkt. No. 70) ¶ 1.)[1] On

August 19, 2013, Plaintiff arrived at Borkholder's Metamora, Illinois facility with an empty

tractor-trailer to pick up a load of bundled foam insulation. (2d Am. Compl. ¶ 6.) At the time,

Chad Schierer was the primary forklift driver and yard foreman at the Metamora facility and was

responsible for loading and unloading deliveries with a forklift. (*Id.* ¶ 7.) As Schierer was

working to move the foam insulation onto the trailer, he reversed the forklift and ran over

Plaintiff's left foot with the right rear tire of the forklift. (*Id.* ¶ 8; SOF ¶¶ 13–14.) Schierer did

not see Plaintiff standing to his right side and only recalled looking over his left shoulder before

he turned the wheel of the forklift and reversed. (SOF ¶¶ 15–16.) Plaintiff did not hear a backup

signal from the forklift. (*Id.* ¶ 18.)

The forklift involved in the accident was a Caterpillar Model No. DP40 owned by

Borkholder. (*Id.* ¶ 5.) Borkholder was responsible for controlling, maintaining, and inspecting

the forklift on a daily basis pursuant to regulations promulgated by the Occupational Safety and

Health Administration ("OSHA"). (*Id.* ¶ 20 (citing 29 CFR 1910.178).) Defendant Fitzgerald is

a service and repair company that services all makes of industrial trucks, including forklifts.

(*Id.* ¶ 3.) With respect to the Caterpillar forklift involved in the accident, Defendant entered into

an Operational Maintenance Agreement ("Maintenance Agreement") with Borkholder on

---

[1] Although Defendant filed a statement of material facts in compliance with Local Rule 56.1, the citations in its accompanying memorandum of law are all to the record, rather than the Rule 56.1(a)(2) statement. *See Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("Citations in the fact section [of a summary judgment motion] should be to the 56.1(a) or (b) statement of facts only."). We will refer to the parties' Rule 56.1 statements of fact, which are all undisputed unless otherwise noted. We also refer to the allegations in the Second Amended Complaint insofar as they are pertinent to resolving Defendant's motion to dismiss Count II.

March 15, 2004 to provide preventative maintenance. (*Id.* ¶ 26.) The agreement solely covers the forklift and states that Defendant agreed to "perform the lubrication and operational maintenance inspection as described on the Operational Maintenance Report Form applying to this agreement and [Borkholder] agree[s] to pay for the same, effective from 3/04 and approximately every 90 days thereafter." (*Id.* ¶ 27; Maint. Agreement (Dkt. No. 71–5).) Defendant could only perform repairs upon the forklift per Borkholder's request and authorization. (*Id.* ¶ 29.) Defendant contends that pursuant to the Maintenance Agreement, it was only obligated to perform lubrication and oil changes on the forklift.[2] (*Id.* ¶ 30.)

The forklift was not designed, manufactured, or shipped to its original purchaser with a backup alarm, and the parties stipulate that no regulations required the forklift to be equipped with a backup alarm on August 19, 2013. (*Id.* ¶¶ 19, 35–36.) However, the parties dispute whether the forklift had a backup alarm installed on it at the time of the accident. (*Id.* ¶ 21; Pl.'s SOF ¶ 21.) None of Borkholder's employees could recall whether the forklift had a backup

---

[2] Plaintiff denies this fact, but only cites to the Maintenance Agreement in support of its denial, without explanation. (Pl.'s L.R. 56.1(b)(3)(B) Resp. to Def.'s SOF ("Pl.'s Resp. SOF") (Dkt. No. 75) ¶ 30.) The Maintenance Agreement is a single-page document, and other than providing "[Fitzgerald] agree[s] to perform the lubrication and operational maintenance inspection as described on the Operational Maintenance Report form," it sets forth no other obligations. (*See generally* Maintenance Agreement.) Neither party has submitted the Operational Maintenance Report form referenced in the agreement, so it is unclear what an "operational maintenance inspection" entails.

alarm on the date of the accident.[3]  (*See* SOF ¶ 21.)  The forklift was serviced several times in

2013 prior to the accident.  It is undisputed that on April 5, 2013, Patrick Boyer, one of

Defendant's technicians, inspected the Caterpillar forklift pursuant to the Maintenance

Agreement.  (*Id.* ¶ 31.)  Boyer later performed repair work on the forklift on April 22, 2013 and

on April 25, 2013 in accordance with Borkholder's authorization.  (*Id.*)  Boyer did not remember

whether the forklift had a backup alarm at the time, but he "did not note a malfunctioning backup

alarm during his preventative maintenance on his checklist" during his April inspections.

(*Id.* ¶ 32.)  Likewise, on July 16, 2013, Defendant's technician Bryan Burden replaced the starter

on the forklift at Borkholder's request; he did not remember whether the forklift had a backup

alarm.  (*Id.* ¶ 33.)  After the accident, Borkholder requested and authorized HuppToyotalift to

install a backup alarm on the forklift.  (*Id.* ¶¶ 23–24.)  On October 1, 2013, Todd Mull, a

HuppToyotalift technician, mounted and wired a new backup alarm and affirmed the forklift did

not previously have a backup alarm.  (*Id.* ¶¶ 24–25.)

## ANALYSIS

### I.    NEGLIGENCE CLAIM (COUNT II)

Defendant seeks summary judgment on Plaintiff's negligence claim (Count II), arguing

Plaintiff cannot establish as a matter of law that Defendant owed Plaintiff a duty.  (Mem. in

Support of Mot. for Summ. J. ("Mem.") (Dkt. No. 69) at 6.)  Plaintiff argues Defendant breached

---

[3] Plaintiff denies Defendant's assertion that "the forklift was not equipped with a backup alarm at
the time of the accident."  (Pl.'s Resp. SOF ¶ 21.)  Plaintiff relies on the testimony of Schierer in
support of his denial.  Schierer, similar to other Borkholder employees, testified he was either not
sure or could not recall whether the forklift had a backup alarm on August 19, 2013.  (*See*
Schierer Dep. (Dkt. No. 71–8) at 21–23, 26–27, 78, 80–81.)  Likewise, Roger Nenne, the general
manager of Borkholder's Metamora facility, and Brandon Meyers, Borkholder's Vice President
and Chief Financial Officer, could not recall whether the forklift was equipped with a backup
alarm at the time of the accident.  (Nenne Dep. (Dkt. No. 71–9) at 12, 26–27, 68–69; Meyers
Dep. (Dkt. No. 71–10) at 11, 18.)  Schierer also conceded that photographs taken of the forklift
the day after the accident showed no backup alarm.  (Schierer Dep. at 78–81.)

a duty (1) to "properly identify and repair" an inoperable backup alarm on the Caterpillar forklift, or, alternatively, (2) to "recommend[] or encourage[] Borkholder to install a backup alarm on the forklift if it did not have one at the time of the accident. (Resp. at 4–5.)

## A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014).  The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted).  To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden of proof at trial.  *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936–937 (7th Cir. 2007) (*citing Celotex*, 477 U.S. at 322–23, 106 S. Ct. at 2552); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) ("A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial.") (citation omitted).  A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (citations omitted)).  We view the record in the light most favorable to

the non-moving party, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

### B. Duty of Care

To establish a claim for negligence under Illinois law, "a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Buechel v. United States*, 746 F.3d 753, 763–64 (7th Cir. 2014); *Thompson v. Gordon*, 241 Ill. 2d 428, 437, 948 N.E.2d 39, 44 (Ill. 2011). Whether or not a duty exists is a question of law. *Bell v. Hutsell*, 2011 IL 110724, ¶ 11, 955 N.E.2d 1099, 1104 (Ill. 2011); *St. Paul Mercury Ins. v. Aargus Sec. Sys., Inc.*, 2013 IL App (1st) 120784, ¶ 58, 2 N.E.3d 458, 478 (1st. Dist. 2013). To determine whether a duty exists, we must "ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Vesely v. Armslist LLC*, 762 F.3d 661, 665 (7th Cir. 2014); *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 18, 965 N.E.2d 1092, 1097 (Ill. 2012).

Plaintiff concedes that Defendant owed no duty to physically "repair or install a backup alarm" on the forklift. (Resp. at 7, 9.) Rather, Plaintiff argues that pursuant to the Maintenance Agreement, Defendant should have: (1) discovered and reported to Borkholder an inoperative alarm, or (2) recommended that Borkholder install a backup alarm if the forklift had none. (*Id.*) Plaintiff insists Defendant owed a duty to make such recommendations to Borkholder if other forklifts and vehicles at the Metamora facility had backup alarms. (*Id.*)

### 1. Duty to Report Inoperative Backup Alarm

As to the first theory, Plaintiff relies on the testimony of Defendant's service manager, Doug Keach, and three of Defendant's technicians, Patrick Boyer, Bryan Burden, and Harold Hamilton. (Resp. at 8.) Plaintiff argues their testimony establishes that if a forklift they

inspected had an inoperable backup alarm, it was their practice to bring it to Borkholder's attention.  (*Id.*)  However, Plaintiff failed to present any evidence indicating the forklift was equipped with a backup alarm on the date of the accident.  The forklift was not designed, manufactured, or shipped to its original purchaser in 1992 with a backup alarm.  (SOF ¶ 19.)  Plaintiff concedes that Borkholder asked another company to mount and wire a backup alarm on the forklift on October 1, 2013, and that the technician performing the installation confirmed that "the forklift did not have any backup alarm before [he] wired and installed the new backup alarm."  (*Id.* ¶¶ 23–25; *see also* Mull Decl. (Dkt. No. 71–15) ¶ 5.)  Schierer confirmed that photographs taken of the forklift the day after the accident showed no backup alarm.  (Schierer Dep. at 78–81.)  While Plaintiff, Schierer, and other Borkholder witnesses testified they were not sure or could not recall whether the forklift had a backup alarm on the day of the accident, the witness' inability to recall cannot alone support an inference that a backup alarm existed. (*See, e.g.*, *id.* at 20–22, 26–27, 78; Pl.'s Dep. (Dkt. No. 71–7) at 54–55, 57; Nenne Dep. at 12, 27–28, 68; Myers Dep. at 11, 18.)  To conclude as much would require speculation, and "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007).  Plaintiff has accordingly failed to raise a genuine issue of material fact regarding whether the forklift was equipped with a backup alarm on the day of the accident, and therefore, he cannot establish Defendant had a duty to repair an inoperable alarm.

### 2.    Duty to Recommend Installation of a Backup Alarm

Plaintiff must therefore rely on his second theory—namely, that Defendant owed a duty to "recommend or encourage" Borkholder to install a new backup alarm on any forklifts that did not have one.

*a)*      *Contractual Duty*

Defendant argues it owed no duty to Plaintiff unless it was imposed by the Maintenance

Agreement with Borkholder. (Mem. at 7.) "A duty sufficient to support liability in tort can arise

from a contractual obligation undertaken by the defendant." *Kurtz v. Wright Garage Corp.*,

262 Ill. App. 3d 1103, 1107, 635 N.E.2d 897, 900 (1st Dist. 1994). "[W]here a charge of

negligence relies upon a duty founded on a contract, the extent of that duty is defined by the

terms of the contract itself." *Smith v. MHI Injection Molding Mach., Inc.*, No. 10 C 8276,

2014 WL 1516592, at *4 (N.D. Ill. Apr. 18, 2014) (citing *Kotarba v. Jamrozik*,

283 Ill. App. 3d 595, 597, 669 N.E.2d 1185, 1188 (1st Dist. 1996)); *see also St. Paul Mercury*,

2013 IL App (1st) 120784, ¶ 60, 2 N.E.3d at 478 ("The scope of the defendant's duties will not

be expanded beyond that required by the contract."); *Eichengreen v. Rollins, Inc.*,

325 Ill. App. 3d 517, 525, 757 N.E.2d 952, 959 (1st Dist. 2001) ("An allegation of negligence

based upon a contractual obligation, although sounding in tort rather than contract, is nonetheless

defined by the contract.").

The Maintenance Agreement does not establish Defendant had a contractual duty to

recommend installation of a backup alarm. Plaintiff argues in conclusory fashion that "pursuant

to the Agreement," Defendant agreed to "recommend[], based on their routine inspection, that a

backup alarm be installed if other vehicles at Borkholder's facility had backup alarms on them,

which they did." (Resp. at 7.) But the Maintenance Agreement says nothing about backup

alarms, much less that backup alarms should be installed on all vehicles in a facility. Rather, the

Maintenance Agreement is a brief, one-page document narrowly covering the Metamora

facility's Caterpillar forklift. (*See generally* Maint. Agreement.) The agreement states only that

Defendant agrees to "perform the lubrication and operational maintenance inspection as

described on the Operational Maintenance Report Form applying to this agreement and

[Borkholder] agree[s] to pay for the same, effective from 3/04 and approximately every 90 days

thereafter." (*Id.*) No evidence supports Plaintiff's assertion that the Maintenance Agreement

required Defendant to notice and recommend that parts such as backup alarms be added to the

forklift, and the plain language of the contract is contrary to Plaintiff's unsubstantiated position.

Accordingly, the Maintenance Agreement imposed no duty on Defendant to recommend

installation of a backup alarm to Borkholder. *See St. Paul Mercury*,

2013 IL App (1st) 120784, ¶ 64, 2 N.E.3d at 480 ("We will not expand a defendant's duties

beyond what the parties agreed upon in a contract."); *Kurtz*, 262 Ill. App. 3d at 1107,

635 N.E.2d at 900 (finding that while the parties had "some form of arrangement" to inspect the

employer's trucks and make minor repairs, Plaintiff failed to submit evidence showing defendant

owed a duty to report or make additional repairs that were not requested or authorized by the

employer).

b)    *Duty to Warn*

Even if there is no contractual duty, Defendant may owe a common law duty of care to

Plaintiff. *Simpkins*, 2012 IL 110662, ¶ 19, 965 N.E.2d at 1097. For example, a defendant may

owe a duty to warn "where there is unequal knowledge, actual or constructive, and the defendant,

possessed of such knowledge, knows or should know that harm might or could occur if no

warning is given." *Kirby v. Gen. Paving Co.*, 86 Ill. App. 2d 453, 457, 229 N.E.2d 777, 279

(1st Dist. 1967). Plaintiff argues a "manufacturer or dealer is in a far better position to

understand and appreciate the hazards presented by backing lift trucks and to understand the

various means of addressing these hazards." (Pl.'s L.R. 56.1(b)(3)(C) Statement of Add'l

Facts ("PSAF") ¶ 30; Resp. at 10.) Plaintiff also alleges that Borkholder thus relied on

Defendant to "make recommendations as to repairs and/or improvements to their Caterpillar forklift." (2d Am. Compl. ¶ 18; PSAF ¶¶ 13, 21; Resp. at 8–9.)

To the extent Plaintiff attempts to assert Defendant breached a common law duty to warn, however, his claim cannot be sustained. There is no dispute that the decision to install a backup alarm rests with Borkholder as the owner or user of the forklift. (SOF ¶ 35; Pacheo Dep. (Dkt. No. 78–17) at 50–51.) Borkholder was responsible for controlling, maintaining, and inspecting the forklift on a daily basis pursuant to regulations promulgated by OSHA. (SOF ¶ 20.) Borkholder installed backup alarms on other vehicles at the Metamora facility, and the record does not indicate it had "unequal knowledge" as to whether its forklift had a backup alarm or of the risks of operating its vehicles without backup alarms. In sum, no reasonable jury could find Defendant owed or breached a duty to warn.

<i>c)</i>     <i>Voluntary Undertaking</i>

Plaintiff also implies Defendant's course of action gave rise to a voluntary undertaking theory of liability. Specifically, Plaintiff alleges Defendant voluntarily made recommendations to Borkholder management to install backup alarms if other vehicles at the facility had backup alarms, and it accordingly should have done so here. (2d Am. Compl. ¶¶ 15–18; PSAF ¶¶ 4–6, 28; Resp. at 5.) "In Illinois, a party to a contract may be liable in tort to a third party who otherwise has no enforceable rights under the contract under a voluntary undertaking theory of liability." *Jakubowski v. Alden-Bennett Const. Co.*, 327 Ill. App. 3d 627, 639, 763 N.E.2d 790, 799 (1st Dist. 2002) (stating Illinois has adopted Restatement (Second) of Torts § 324A); *accord Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560 (Ill. 1992).

Plaintiff has cited no legal authority supporting a voluntary undertaking theory of liability. Nevertheless, Plaintiff contends Defendant's technicians were "required to make recommendations to Borkholder to install a backup alarm on its Caterpillar forklift if other forklifts and/or other vehicles at Borkholder's Metamora facility had backup alarms." (2d Am. Compl. ¶ 15; PSAF ¶ 6; Resp. at 7–9.) Plaintiff argues that Defendant's general manager, Travis Cowley, along with Boyer, testified that it was their practice to recommend a backup alarm if other vehicles at the Metamora facility had alarms. (Boyer Dep. (Dkt. No. 78–12) at 12; Cowley Dep. (Dkt. No. 78–20) at 7.) Schierer, Nenne, and Defendant's expert George Karosas testified that other vehicles present at the Metamora facility on the date of the accident were indeed equipped with backup alarms. (Resp. at 5–6; PSAF ¶¶ 4–5, 12, 28.) Nenne also testified that although Defendant's technicians primarily provided oil changes and lubrication on Borkholder's forklifts, he recalled them occasionally reporting to Borkholder other issues, such as wear on parts, adjustments needed on a brake cable, or "if there was anything else that was getting bad to where it might be harmful to the machine . . . or the safety of somebody." (Nenne Dep. at 22–25, 76.) Nenne did not recall Defendant's technicians ever "saying something had to be added or deleted or fixed" though, and he agreed that the technicians were under no obligation to do anything other than change the oil and grease the machines. (*Id.* at 76.) Given the presence of other vehicles at Metamora with backup alarms, and the testimony indicating Defendant's technicians sometimes made safety recommendations, Plaintiff argues Defendant breached a duty to make a recommendation with respect to the forklift involved in Plaintiff's accident.

Under the Restatement (Second) of Torts § 324A, liability for a voluntary undertaking may ensue if: (a) a party undertakes to do something and then fails to exercise reasonable care in

a way that increases a third party's risk of harm; (b) undertakes to perform a duty that a different party was obligated to perform and then negligently fulfills its duty; or (c) a third party relies to its detriment on the fact that a duty has been voluntarily undertaken. *LM ex rel. KM v. United States*, 344 F.3d 695, 701 (7th Cir. 2003). Under a voluntary undertaking theory of liability, "the duty of care to be imposed upon a defendant is limited to the extent of its undertaking." *Bell*, 2011 IL 110724, ¶ 12, 955 N.E.2d at 1104 (citing *Frye*, 153 Ill. 2d at 32, 605 N.E.2d at 560); *see also St. Paul Mercury*, 2013 IL App (1st) 120784, ¶ 61, 2 N.E.3d at 479 ("The voluntary undertaking theory is to be construed narrowly and the duty of care is limited to the extent of the voluntary undertaking."); *Buerkett v. Ill. Power Co.*, 384 Ill. App. 3d 418, 427, 893 N.E.2d 702, 713 (4th Dist. 2008) ("Courts narrowly construe the voluntary-undertaking theory.").

Plaintiff has not established Defendant owed a duty under any of the three prongs of § 324A. Plaintiff fails to marshal evidence supporting a theory under § 324A(a) that Defendant "increase[d] the risk of . . . harm" to Plaintiff by performing inspections pursuant to the Maintenance Agreement without recommending the installation of a backup alarm. Restatement (Second) of Torts § 324A(a); *Baroni v. Viox Servs., Inc.*, No. 11 C 3738, 2014 WL 3805745, at *5 (N.D. Ill. July 30, 2014) (finding that even if defendant maintenance company "failed to notify or remedy the trip hazard," there was no evidence that "by its actions, [defendant] increased the risk of harm" as it did not "create the carpet tear, it did not tape the tear, and it did not place the rug over the tear"). It is undisputed that there were no regulations requiring a forklift to be equipped with a backup alarm, and the decision to install a backup alarm rests with the owner or user—in this case, Borkholder. (SOF ¶ 35; Pacheo Dep. at 50–51.)

Therefore, Plaintiff has not shown Defendant increased any risk of harm by failing to recommend a device that was not otherwise required by law or requested by the forklift's owner.

Likewise, under § 324A(c), Plaintiff has not alleged, nor has he asserted any evidence showing that he reasonably relied on Defendant to "recommend or encourage" Borkholder to install a backup alarm, causing Plaintiff or Borkholder to forego other remedies or precautions. *See Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 390, 493 N.E.2d 1022, 1027 (Ill. 1986) (citing § 324A(c)). "Cases of nonfeasance, or 'a failure by omission to perform the voluntary undertaking,' as opposed to misfeasance, require a plaintiff to show that she relied on the defendant's actions." *Baroni*, 2014 WL 3805745, at *5 (quoting *Buerkett*, 384 Ill. App. 3d at 428, 893 N.E.2d at 714); *see also Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768 (7th Cir. 2015) ("[W]here . . . the plaintiff seeks to hold the defendant liable for nonfeasance (omission to perform a voluntary undertaking) rather than misfeasance (negligent performance of a voluntary undertaking), Illinois law requires that the harm suffered must be a result of one's reliance upon the undertaking."). Plaintiff has failed to offer any evidence that he relied on Defendant to recommend that forklifts at the Metamora facility were equipped with backup alarms.

Finally, even if Defendant's technicians sometimes provided such recommendations, Plaintiff has presented no evidence supporting an inference that Defendant supplanted from Borkholder a duty to make safety recommendations for its employees as required to impose liability under § 324A(b). *Frye*, 153 Ill. 2d at 33, 605 N.E.2d at 560 (finding a pharmacy's warning that a prescription might cause drowsiness did not create a duty to warn of other side effects, finding such a duty would cause pharmacists to refrain from placing warning labels on containers at all); *see also Boogaard v. Nat'l Hockey League*, 126 F. Supp. 3d 1010, 1018

(N.D. Ill. 2015) ("The voluntary undertaking doctrine is narrow.  As the Supreme Court of Illinois explained, courts would risk deterring good deeds if they construed assumed duties too broadly; if people had to help a lot whenever they helped a little, they might hesitate to help at all."); *Padilla v. Hunter Douglas Window Coverings, Inc.*, No. 09 C 1222, 2012 WL 3265002, at *5 (N.D. Ill. Aug. 8, 2012) ("[For a party to be liable under Section 324A(b) under Illinois law, the party must supplant the duty it undertakes from the party that originally held the duty, not merely assist or supplement the service provided by the other."); *Gerard v. ConAgra Foods, Inc.*, No. 06 C 6163, 2010 WL 1710820, at *6 (N.D. Ill. Apr. 28, 2010) ("[A] holding by this court that undertaking any investigation requires some specific and more extensive inquiry might have the undesirable effect of discouraging investigations altogether.").  As no reasonably jury could conclude Defendant supplanted a duty to make safety recommendations for all equipment operated by Borkholder's employees, Plaintiff has not established any duty under § 324A(c).

*     *     *

Accordingly, for the foregoing reasons, Plaintiff has failed to establish Defendant owed a duty to Plaintiff to repair an inoperable backup alarm or to recommend or encourage Borkholder to install an alarm on the forklift.  Defendant's motion for summary judgment as to Count II is granted, and Plaintiff's negligence claim is dismissed.

## II.     IN CONCERT LIABILITY CLAIM (COUNT I)

Defendant also argues we should dismiss Plaintiff's in concert liability claim (Count I) as he has failed to state a claim upon which relief can be granted.  (Mot. to Dismiss (Dkt. No. 86).)  We previously granted Defendant's motion to dismiss the same count from Plaintiff's First Amended Complaint.  (*See* Aug. 18, 2017 Order (Dkt. No. 66) (dismissing Count I of Plaintiff's First Amended Complaint).)  Defendant argues Plaintiff's Second Amended Complaint again fails to allege that Defendant engaged in any affirmative acts that constitute a concerted effort to

commit a tortious act. (*Id.* at 4.)  Rather, Defendant contends Plaintiff has solely alleged a string of actions Defendant purportedly failed to take, including failing to advise Borkholder or recommend a backup alarm be installed on forklifts at the Metamora facility. (*Id.*)

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs Defendant's motion to dismiss for failure to state a claim upon which relief may be granted.  In ruling on a 12(b)(6) motion, the court accepts "the allegations in the complaint as true unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'"  *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).  The complaint must state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65).  That is, while the plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.

### B.    In Concert Liability

Plaintiff alleges that "Fitzgerald acted in concert with Borkholder in allowing, directing and encouraging Borkholder and its employees to operate forklifts without a critical safety device, a backup alarm," and by "failing to recommend the installation and/or repair of the

backup alarm on the Caterpillar forklift, despite other forklifts and trailers at Borkholder's Metamora facility having backup alarms." (2d Am. Compl. ¶¶ 22–23; *see also id.* ¶ 28 (alleging Defendant's concerted activity included "allowing Borkholder employees, including Stanley Hutchison, to work in proximity to a forklift without a backup alarm and failing to recommend and/or install a backup alarm on Borkholder's forklift").)

In concert liability "establishes a legal relationship" between a tortfeasor who has acted in concert with other individuals. *Woods v. Cole*, 181 Ill. 2d 512, 519–20, 693 N.E.2d 333, 337 (Ill. 1998). "By virtue of this relationship, the tortfeasor becomes liable for the actions of those with whom he acted in concert" such that "there is a joint enterprise, and a mutual agency, *so that the act of one is the act of all*, and liability for all that is done is visited upon each." *Id.* (emphasis in original) (quoting Prosser & Keeton on Torts § 52, at 346 (5th ed. 1984)). To be held liable, the "defendant's conduct must be 'more than benign,'" and the defendant generally "must actively participate in the tortious conduct of another." *Rogers v. Reagan*, 355 Ill. App. 3d 527, 533, 823 N.E.2d 1016, 1020 (1st Dist. 2005) (quoting *Sanke v. Bechina*, 216 Ill. App. 3d 962, 971, 576 N.E.2d 1212, 1218 (2d Dist. 1991)).

The Illinois Supreme Court has adopted the Restatement (Second) of Torts § 876 construction for determining whether defendants have engaged in concerted action to commit a tortious act. *Simmons v. Homatas*, 236 Ill. 2d 459, 483, 925 N.E.2d. 1089, 1104 (Ill. 2010); *Woods*, 181 Ill. 2d at 516–17, 693 N.E.2d at 335–36. Under § 876, a defendant may be liable for harm to a third person where he (1) "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"; or (2) "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

*Id.* §§ 876(b), (c). Liability under §§ 876(b) and (c) "is not based on common design or agreement, but on substantial assistance." *Fortae v. Holland*, 334 Ill. App. 3d 705, 717, 778 N.E.2d 159, 169 (5th Dist. 2002). Plaintiff must demonstrate that "the defendant did not merely fail to act, but also assisted the third party." *Simmons*, 236 Ill. 2d at 476–77, 925 N.E.2d at 1100; *see also Sanke*, 216 Ill. App. 3d at 971, 576 N.E.2d at 1218 ("The elements of section 876 require such affirmative conduct that one's own actions create a duty."); *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 23, 31 N.E.3d 298, 305 (2d Dist. 2015) (finding a plaintiff adequately stated a claim where he alleged the defendant's "encouragement served as an affirmative act" leading to his injuries). Additionally, "it is not enough that a defendant assist or encourage another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial, not merely slight." *Kohn v. Laidlaw Transit, Inc.*, 347 Ill. App. 3d 746, 759, 808 N.E.2d 564, 575 (5th Dist. 2004).

For the same reasons we set forth above in dismissing Plaintiff's negligence claim against Defendant, Plaintiff cannot rely on § 876(c) to state an in concert liability claim against Defendant. Because Plaintiff cannot establish that Defendant's conduct, "separately considered, constitutes a breach of duty" to Plaintiff, Defendant cannot be liable under a concert of action theory. Restatement (Second) § 876(c), cmt. e ("When one personally participates in causing a particular result in accordance with an agreement with another, he is responsible for the result of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result, irrespective of his knowledge that his act or the act of the other is tortious."); *see also Glob. Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 724–27 (N.D. Ill. 2015); *Norman v. Brandt*, 397 Ill. App. 3d 1074, 1083, 929 N.E.2d 14, 21 (4th Dist. 2010).

Under § 876(b), Plaintiff's complaint also falls short of pleading sufficient facts to establish a plausible inference that Defendant provided substantial assistance or encouragement to Borkholder in breaching a duty to Plaintiff.  "[S]ection 876(b) applies when 'the person did not commit an act that would be a tort, but that person gave substantial assistance or encouragement to another party whose actions constituted a tort *and* that person *knew* that the other person's conduct constituted a tort.'"  *Norman*, 397 Ill. App. 3d at 1082, 929 N.E.2d at 20 (emphasis in original) (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 796, 898 N.E.2d 776, 783 (4th Dist. 2008)).  In determining whether a defendant's conduct substantially assisted or encouraged tortious behavior, "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered."  Restatement (Second) of Torts § 876, cmt. d (further providing that the "assistance of or participation by the defendant may be so slight that he is not liable for the act of the other"); *see also Sanke*, 216 Ill. App. 3d at 965–66, 576 N.E.2d at 1214.

Plaintiff's non-conclusory allegations do not establish a plausible inference that Defendant affirmatively encouraged or participated in Borkholder's allegedly tortious behavior such that Defendant's actions constitute substantial assistance.  Further, there is no allegation that any of Defendant's technicians or employees were present at the time of the accident, and Plaintiff has offered no plausible basis for establishing a relationship between Defendant and Borkholder such that they were engaged in a joint enterprise where "the act of one is the act of all, and liability for all that is done is visited upon each."  *Woods*, 181 Ill. 2d at 519–20, 693 N.E.2d at 337 (emphasis in the original) (quoting W. Keeton, Prosser & Keeton on Torts § 52, at 346 (5th ed. 1984)); *see also*

*Glob. Cash*, 148 F. Supp. 3d at 725 ("[E]ven if the defendant is unaware that it or the 'other' is acting tortiously, the defendant must still be acting according to an 'agreement with another' and in a 'united effort' to commit the tort." (quoting Restatement (Second) of Torts § 876, cmt. e)).  Plaintiff's allegation that Defendant "allowed" Borkholder employees to work "in proximity to a forklift without a backup alarm" is conclusory and cannot support his claim, as Plaintiff does not allege any basis for establishing Defendant had the authority, ability, or duty to control or direct Borkholder employees. (Am. Compl. ¶ 28.)  *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Katz-Crank*, 843 F.3d at 646 ("We accept the allegations in the complaint as true unless they are threadbare recitals of a cause of action's elements, supported by mere conclusory statements." (internal quotation marks omitted)).

Plaintiff's remaining allegations are all grounded on Defendant's alleged *failure* to act—namely, Plaintiff contends that in "[f]ailing to recommend the installation and/or repair of the backup alarm on the Caterpillar forklift," Defendant "provided substantial assistance and/or encouragement to Borkholder."  (*Id.* ¶ 26; *see also id.* ¶¶ 20–23.)  But failing to advise or recommend does not amount to substantial assistance or encouragement to commit tortious activity.  *Sanke*, 216 Ill. App. 3d at 971, 576 N.E.2d at 1218 (explaining liability under § 876 requires "affirmative conduct" that is "more than benign"); *Umble v. Sandy McKie & Sons, Inc.*, 294 Ill. App. 3d 449, 451–52, 690 N.E.2d 157, 159 (2d Dist. 1998) ("We do not equate

failing to prevent certain conduct with actively encouraging that conduct."); *Simmons*, 236 Ill. 2d at 476–77, 925 N.E.2d at 1100 (explaining the plaintiff must show "the defendant did not merely fail to act, but also assisted the third party"). Plaintiff does not allege that Defendant affirmatively encouraged Borkholder to omit the backup alarms, or that Defendant urged Borkholder to use forklifts without backup alarms by effectively eliminating any alternatives. *C.f., e.g.*, *Winters*, 386 Ill. App. 3d at 794, 898 N.E.2d at 781 (affirming denial of motion to dismiss where plaintiff alleged that the drive of an escort vehicle had affirmatively provided inaccurate information to the escorted vehicle, instead of merely failing to prevent negligent driving); *Simmons*, 236 Ill. 2d at 476–77, 925 N.E.2d at 1100 (affirming the trial court's denial of a motion to dismiss because plaintiff alleged that defendant affirmatively assisted another in driving while intoxicated by forcing him to leave its establishment and requiring him to get into his car, rather than merely failing to prevent him from driving while intoxicated); *see also Umble*, 294 Ill. App. 3d at 451–52, 690 N.E.2d at 159 (holding mechanic's failure to stop intoxicated driver from leaving after performing maintenance on driver's car did not amount to substantial assistance).

Plaintiff's complaint does not support an inference that Defendant actively encouraged Borkholder to breach a duty to Plaintiff, or that any assistance Defendant provided to Borkholder amounts to encouragement that is "substantial, not merely slight." *Kohn*, 347 Ill. App. 3d at 759, 808 N.E.2d at 575. As substantial assistance is an essential element of a claim under §§ 876(b) and (c), it necessarily follows that Plaintiff's claim for in concert liability fails as a matter of law. Accordingly, we grant Defendant's motion to dismiss Count I, with prejudice.

## CONCLUSION

For the reasons stated above, we grant Defendant's motion for summary judgment on Plaintiff's negligence claim (Count II). We also grant Defendant's motion to dismiss Plaintiff's in concert liability claim, with prejudice (Count I).  It is so ordered.


_____
Marvin E. Aspen
United States District Judge

Dated: May 4, 2018
      Chicago, Illinois